**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

In re:

**DENNIS E. PEARCE and**                                          **CASE NO. 12-50063**
**CHERYL A. PEARCE**

**CHAPTER 7**

**MEMORANDUM OPINION AND ORDER**

The issue before the Court is whether granting Debtors Dennis E. Pearce and Cheryl A. Pearce a discharge of their debts under Chapter 7 of the Bankruptcy Code would constitute an abuse of the provisions of Chapter 7 when the totality of Debtors' financial circumstances is considered under 11 U.S.C. § 707(b)(3). Based on the following reasons, the Court holds the totality of Debtors' financial situation demonstrates abuse.

*Background*

Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 10, 2012. On March 19, 2012, the United States Trustee filed a motion to dismiss the case under 11 U.S.C. § 707(b)(1), citing a "presumption of abuse" under 11 U.S.C. § 707(b)(2) and "totality of circumstances" under 11 U.S.C. § 707(b)(3). [Doc. 18]. By an agreed order the parties resolved and dismissed the portion of the motion based on 11 U.S.C. § 707(b)(2). [Doc. 34].

An evidentiary hearing was conducted on the totality of circumstances under 11 U.S.C. § 707(b)(3)(B) on July 5, 2012. In preparation for the hearing, the parties submitted affidavits and stipulations of fact. [Joint Stipulations, Doc. 43; affidavits, Doc. 44, Doc. 47 and Doc. 48]. At the hearing, the parties presented testimony from John Todd Wright, analyst for the United States Trustee, Cheryl Pearce, and Dennis Pearce. At the conclusion of the hearing, both parties made oral arguments and the matter was taken under submission.

Prior the evidentiary hearing Debtors submitted a memorandum of law [Doc. 46], and after the hearing the United States Trustee presented additional case law.   [Doc. 56].

***Findings of Fact***

Debtor Dennis Pearce has stable employment with Lexmark International and earned $8,432.67 gross monthly income as of the petition date.[1]   Debtor Cheryl Pearce was previously employed as a dental hygienist, but lost her job at the end of September 2011.   She currently receives $1,660.00[2] monthly in unemployment benefits.   This benefit will likely cease in December 2012.   Cheryl Pearce testified by deposition that she plans to find another job when her unemployment benefits end.

According to their schedules, Debtors have $542,610.00 in exempt retirement assets and a $43,250 homestead exemption.   If Debtors emerged from bankruptcy with a discharge, they will have a net worth of nearly $600,000.00, virtually all of which value would be comprised of the retirement assets and homestead exemption.

Debtors' original Schedules I and J reflect a monthly deficit of $34.50.   Debtors made the following statement with regard to the deficit in the reaffirmation agreement with Toyota Motor Credit Corporation for the 2010 Prius,[3] [Doc. 16], "minimal adjustments in any of several listed expenses will bring the net income and expenses to zero."

Debtors' amended Schedules I and J, [Doc. 49], filed on July 2, 2012, reflect a monthly deficit of $968.50.   Dennis Pearce testified the amount should actually show a monthly shortfall of $768.50 due to an error in the expense labeled "education necessary to maintain employment".   He further testified he and Cheryl Pearce are not borrowing to pay their monthly living expenses,

---

1    According to the amended Schedule I, filed on July 2, 2012, Debtor Dennis Pearce now earns $8,649.33 gross monthly income.

2    Schedule I, filed with the petition, shows unemployment income of $1,798.33 for Cheryl Pearce.

3    The agreement reaffirmed a debt of $25,049.46 on a vehicle having a market value of $19,500.

2

and explained they have adjusted expenses in various categories each month thereby keeping expenses in line with their income.

Debtors have contemplated their future retirement for a number of years.   In particular, Debtors made plans to construct a retirement home and purchased three building lots toward that goal.

First, in August 2004, Debtors purchased a lot on a bluff overlooking Lake Cumberland in Russell County at an approximate price of $79,000.00.   Branch Banking and Trust Company ("BB&T") financed the purchase.   Debtors intended to build a vacation and retirement home, but did not start construction.   When the Wolf Creek Dam was designated as having a high risk of failure, the lake level was lowered significantly and remains at the lower level at least until the dam repairs are completed.   Once the lake level was lowered, Debtors' lake-view lot became a grassy-lake-bottom-view lot.

Debtors listed this property for sale at $119,000.00, approximately twelve to eighteen months after the purchase and prior to the lowering of Lake Cumberland.   Debtors received no offers in the years prior to the filing of a January 2011, foreclosure action.   This Russell County property was purchased by BB&T at the foreclosure sale for $12,800.00, representing approximately sixteen percent of Debtors' original purchase price.

The decision not to build near Lake Cumberland was made in part because Debtors decided they would rather retire in either North Carolina or South Carolina.   During this period, Debtors sold their residence[4] with the intention of building a smaller home southwest of Fayette County, Kentucky and buying a building lot in the Carolinas.   Debtors temporarily moved into a smaller house at 3844 Foley's Trail, Lexington, which rented for $1,200.00 monthly.[5]

---

4       Most statements made by Debtors regarding this property include references to the 5000 square feet of living space in the home.

5       The home at Foley's Trail was a 1,749 square foot residence.

3

In October 2007, Debtors purchased a lot for $289,850.00, in a planned development in South Carolina.  This purchase was financed by The Palmetto Bank, which was the lender financing the entire development as well as individual lot purchases.  The developers represented to Debtors the development would be completed in May 2009, including amenities such as a clubhouse, lazy river, pool and marina.

At the time of this lot purchase, all waterfront lots were sold.  Debtors preferred a waterfront lot, but chose to make this purchase despite the location in a cove and not on the water.

In February 2008, a waterfront lot became available.  Debtors, after discussion with the realtor, purchased this lot for $318,250.00, which they also borrowed from The Palmetto Bank.  Debtors, in reliance on the realtor's representations and assurances, intended and expected to sell the lot purchased in October 2007 for a profit, and use the profit to pay down the mortgage on the waterfront lot.  The first lot was listed for sale with the realtor when the second lot was purchased.

Debtors believed the South Carolina property would be an ideal location for their retirement home, abandoned their plan to build southwest of Fayette County, remained in the rental home and began job searches in South Carolina.

Following the purchase of the South Carolina lots, in mid-2009 The Palmetto Bank terminated the funding of the development.  As a result, the developers were unable to complete the planned community.  Roads were not paved and virtually none of the planned amenities were constructed.  Consequently, Debtors did not build on either lot.

Despite having three loans secured by mortgages on vacant lots, Debtors decided to purchase a home in Lexington.  Debtors attribute the timing of the purchase to a desire to obtain

4

a home while they could still acquire a mortgage loan.   Debtors contracted to build a townhouse[6] in southeast Lexington in September 2009.   They closed on the finished property in July 2010, for a total purchase price of $432,000.00.   Debtors made a ten percent down payment on the property using funds borrowed from Dennis Pearce's 401(k) retirement account.

Debtors also used borrowed 401(k) funds to pay off their sons' student loans, Debtors' other debts and some living expenses in order to qualify for the mortgage loan.   The monthly payment for the 401(k) loan is $1,009.67 with the final payment due March 16, 2015.

In September 2010, Debtors purchased a 2010 Toyota Prius for $35,664.80 to replace a 1995 Honda Odyssey, which they traded.   They financed $33,187.59 of the purchase price over five years, with the final payment due September 2015.   That same month, Debtors also purchased a 2010 Honda CR-V for $30,892.39 to replace a 1999 Nissan Pathfinder, which they sold privately.   They financed the full purchase price over five years, with the final payment due in September 2015.

In October 2010, as the mortgage payments for their newly constructed home began, Debtors ceased payments on the debts on the lot in Russell County and the two lots in South Carolina.   Prior to this time, Debtors had timely paid and were current on their obligations, including the mortgage debts for the three vacant lots.

### Analysis

In deciding whether to apply § 707(b) to an individual debtor, a court should ascertain from the totality of the circumstances whether the debtor is merely seeking an advantage over his creditors, or whether the debtor is "honest" and "needy."   *In re Behlke,* 358 F.3d 429, 434 (6th Cir. 2004); *see* 11 U.S.C. § 707(b)(3)(A) and (b)(3)(B).   An honest debtor's relationship with creditors is marked by essentially honorable and nondeceptive dealings.   *In re Behlke,* 358 F.3d

---

6       A 3,454 square foot townhome with an address of 3846 Wentworth Place.

5

at 434.    A needy debtor's financial predicament warrants the discharge of his debts in exchange for the liquidation of his assets.    *Id.*

In this instance, while Debtors' honesty is not questioned, Debtors clearly are not needy. By contrast, they are fortunate debtors in a family of two enjoying an annual gross income in excess of $100,000.00.    These debtors are seeking an advantage over their creditors.    Their financial predicament, while unfortunate, does not warrant a discharge of their debts because they have the ability to repay a portion of their debt in a Chapter 11 plan.

Bankruptcy is meant to afford a debtor a fresh start.    *In re Jordan,* 428 B.R. 430, 434 (Bankr. N.D. Ohio 2010).    It is an abuse of the process for a debtor to seek to use bankruptcy to obtain a head start.    *Id.*; *In re Zick*, 931 F.2d 1124 (6th Cir. 1991).    Debtors are attempting to use the bankruptcy process to gain a head start.    There is no right to a head start.    *In re Zick*, 931 F.2d at 1130.

The majority of the debt at issue in this case arose as a result of poor decision making with regard to the purchases of three different parcels of real property on which Debtors intended to build retirement homes.    While the circumstances surrounding the decrease in the values of the properties were unfortunate, Debtors ultimately chose to continue buying properties prior to selling the previously purchased parcels.    As a bankruptcy court in the Northern District of Ohio stated, the commencement of a bankruptcy case cannot always, nor should it always, operate to nullify poor planning decisions made by debtors.    *In re Peoples*, 345 B.R. 840, 846 (Bankr. N.D. Ohio 2006).

Debtors voluntarily accumulated debt in the hopes of building their dream home.    When their plans changed and Debtors realized they were unable to sell the properties or continue servicing the debt, they formulated an alternate retirement plan.    They paid off their sons' student loan debt, on which they were jointly obligated, using funds from Dennis Pearce's 401(k) thereby allowing them to qualify for an additional mortgage loan.    They built a larger, more expensive

6

home and moved out of their smaller rented home.    They purchased two new vehicles and in the following month stopped servicing the debt on the three "retirement" lots.

Debtors are now seeking to discharge their liability for the deficiency balances owed for the lots they purchased, retain their desirable assets and emerge from bankruptcy with a net worth of approximately $600,000.00.    Contrary to the approach taken by these debtors, bankruptcy does not operate solely for the debtors' benefit.    *In re Peoples*, 345 B.R. at 845-46. The debtors' creditors have the right to expect fair treatment within the framework provided by the Bankruptcy Code.    *Id.*, citing *In re White Mountain Mining Co, LLC*, 403 F.3d. 164, 170 (4th Cir. 2005).

The United States Trustee has demonstrated with some belt-tightening and lifestyle adjustments, disposable income is available to repay Debtors' creditors.    Debtors enjoy a gross annual income in excess of $100,000.00 based solely on Mr. Pearce's salary.    Even with the reduction to or loss of Mrs. Pearce's income, Debtors could reduce their spending in any number of areas allowing for a meaningful repayment to creditors.    According to the testimony of the expert witness for the United States Trustee, the most recent Consumer Expenditure Survey compiled by the Bureau of Labor Statistics states that the average annual expenditure for housing in [this region of the United States] is $14,890 ($1,241.00 monthly).    Debtors spend more than double this amount servicing the two mortgages, paying maintenance and homeowners association dues on their personal residence.    Debtors also spend more than $1,100.00 each month servicing vehicle debt.    Mr. Pearce testified he and his wife have adjusted their expenses to meet their monthly obligations throughout the pendency of their bankruptcy case and they have the ability to make further reductions to allow fair treatment to their creditors.[7]

---

[7]    For instance, Debtors schedule an expense of $300 each month for the care of a dependant living elsewhere.    Debtors testified that both sons are adults with college educations, paid for by Debtors.    Debtors offered no documentary proof supporting this expense.

7

Additionally, Debtors are making several debt payments which will be fully repaid within a five year term of a Chapter 11 repayment plan.   Debtor's 401(k) loan will be repaid in March 2015, and both vehicle loans will be paid off in September 2015.

The United States Trustee, as the moving party, has the burden of proof under the § 707(b)(3) totality of the debtor's financial circumstances standard.   *In re Beckett*, 442 B.R. 638, 645 (Bankr. N.D. Ohio 2011).   In this instance, the United States Trustee presented evidence showing Debtors have an ability to repay their creditors out of their future household earnings.

### Conclusion

In reaching this conclusion, in addition to the record, the Court considered the stability of Dennis Pearce's income, Debtors' eligibility for adjustment of their debts through Chapter 11, and Debtors' ability to reduce expenses significantly without depriving themselves of adequate food, clothing, shelter and other necessities.   *McGowan v. McDermott*, 445 B.R. 821, 825 (N.D. Ohio 2011); *In re Kohn*, 866 F.2d 123, 126 (6th Cir. 1989).   Section 707(b)(1) supports the dismissal of this case because the granting of relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of Chapter 7.   Accordingly, Debtors shall have twenty-one days from the entry of this order within which to file a motion to convert this case to a case under Chapter 11 of the Bankruptcy Code, or this case shall be dismissed.

Copy to:
Debtors
John E. Davis, Esq.
Rachelle C. Dodson, Esq., for the United States Trustee

8

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
**_Joseph M. Scott, Jr._**
**Bankruptcy Judge**
**Dated: Wednesday, July 25, 2012**
**(jms)**